**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 07-22659-CIV-MOORE (GARBER)
Criminal Case No. 99-6153-CR-MOORE (s)(s)(s)(s)

FABIO OCHOA-VASQUEZ,                           :
        Petitioner,                           :
             v.                           :
UNITED STATES OF AMERICA,              :
        Respondent.                         :
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .:

**PETITIONER'S MOTION FOR LEAVE TO CONDUCT DISCOVERY**

The Petitioner, Fabio Ochoa-Vasquez, through undersigned counsel, and pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings in United States Courts, as well as 28 U.S.C. § 2246, respectfully requests this Honorable Court for leave to conduct discovery concerning the matters raised in his petition and all subsequent pleadings. In support of this request, the Petitioner states the following:

**Good Cause Exists to Conduct Discovery in the Instant Matter**

At issue in the instant case, *inter alia*, is whether certain pre-trial promises and/or inducements were made by the Government to cooperating witness, Alejandro Bernal (hereinafter "Bernal") that were disclosed to the Court or counsel for Petitioner prior to Petitioner's criminal trial. [DE 50]. Also at issue is whether Bernal, as the principal cooperating witness during the Petitioner's trial, was a truthful witness concerning other factual matters and/or whether the Government had reason to believe (either before or

-1-

during the trial) that he had lied.

Given the public records documents obtained thus far (portions of which are either attorney-client communications or the work product of Bernal's attorney), at least two distinct categories of perjury clearly exist. First, the documents (i.e., letters, e-mails, and attorney memoranda) show that Bernal lied about various facts during his testimony. Although each these documents will be individually addressed, *infra*, their content also proves the existence of at least two sub-categories of perjury: (1) those lies that are directly relevant to either the government's theory of prosecution or Petitioner's theory of defense or (2) those lies that are relevant only to Bernal's general veracity.

Secondly, and perhaps more importantly, Bernal's attorney-client communications and his attorney's work product show that, in order to induce his testimony against the Petitioner, the government made various promises including, but not limited to, a lower sentence, immigration assistance for Bernal's family, "subsistence" cash payments to his family, promises not to prosecute members of his family, and release of his and his family's property in Colombia. None of these inducements were disclosed to the defense team representing Petitioner at trial. And, of course, during the trial itself, Bernal denied (or failed to reveal) these inducements all together.

Thus, the Petitioner has clearly raised issues in his Amended Petition that are supported, if not proven, by a number of the communications between Bernal and his attorneys as well as by communications between Bernal's attorneys and representatives of the Government.

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 • (305) 373-6773; FACSIMILE: (305) 373-3832

Given that Petitioner continues to obtain even more of Bernal's attorney-client communications, as well as his lawyer's actual work-product, that has been disseminated by Bernal himself, it is obvious that Bernal is no longer able to claim any privilege as to these types of communications. Since many of these documents directly reference additional documents of either a similar or corroborating nature that remain undisclosed, it also clearly appears that the disclosures made by Bernal, to date, may be only a small portion of a much larger universe of relevant potential discovery. This is because, without exception, these documents (several of which were authored <u>prior</u> to Bernal's guilty plea, many which were authored prior to Petitioner's trial, and most of which reveal ongoing prosecution efforts that spanned "several months" to "keep . . . commitments" to Bernal) are highly relevant to the issues now before this Court.

The written communications described *supra*, actually support the instant request to engage in discovery. Not only do these documents show that promises were clearly made to Bernal by the Government, but they actually prove that communications regarding these undisclosed promises pre-dated Petitioner's trial. Thus, further development of these facts, through discovery, will provide a clear reason to believe that the Petitioner may be entitled to relief, and as a result, a clear showing that good cause exists for this Court to permit Petitioner leave to conduct certain limited discovery.

### 1.   The e-mails between Bernal's lawyer and Government counsel.

Prior to Bernal's change of plea, prior to Petitioner's trial, and thus prior to Bernal's testimony, there were a series of e-mails between Bernal's counsel, Ruben

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 ● (305) 373-6773; FACSIMILE: (305) 373-3832

Oliva, Esq., (hereinafter "Oliva"), and AUSA Glenn Alexander. These e-mails not only suggest the existence of even more yet undisclosed communications between the parties, but they are also clear evidence of the existence of undisclosed promises by the government to Bernal. As the following e-mail excerpts from the end of 2002 clearly show, some of these promises were even intended to manipulate the Court's sentencing schedule in order to obtain a lower potential sentence for Bernal:

> "Dear Glenn:
>
> I **reviewed the plea agreement** with [Bernal] . . . This e-mail will **also confirm** our conversation . . . **that the parties will request that the sentencing of Alejandro Bernal be continued until after he renders his testimony.** [And] that **you agree that any such motion will be a JOINT motion and not an unopposed motion** filed by me **since Judge Moore is more likely to grant either a Government motion of a joint motion.** . . . In any case, I firmly believe that continuing the sentencing until after his testimony is to **the benefit** of all the parties since it will insure that both the Defendant and the Government fulfill their **respective promises** under the plea agreement...
>
> Ruben Oliva

See Composite Exhibit A (emphasis added).  In response, the Assistant United States Attorney agreed to file a joint motion to continue Bernal's sentencing.  Obviously, and to the extent that these e-mails were written prior to even the scheduling of Bernal's change of plea, (much less his sentencing hearing) it is a memorization of certain undisclosed promises made by the Government to Bernal prior to the latter's change of plea. *Id*

Additionally, e-mail exchanges between Oliva and government representatives continued concerning undisclosed promises for several months in 2003. These e-mails

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 ● (305) 373-6773; FACSIMILE: (305) 373-3832

addressed the immigration status of Bernal's family, monetary cash "subsistence" payments to Bernal's family, and other matters including, but not limited to, the seizure of Colombian property. *See* Composite Exhibit A. According to one of the email exchanges shortly after Bernal testified, government counsel (who had been apparently working for <u>many</u> <u>months</u> at providing benefits to Bernal and his family) wrote that the DEA case agent "has been working furiously to help Bernal's family get paroled in the U.S., get funds for their subsistence . . . [and] has also worked incessantly to help with Bernal's [prison] designation and SHU placement." *See* Composite Exhibit A. Government counsel also explained that he had personally contacted a Department of Justice official at the American Embassy in Colombia "to look into . . . Bernal's father in law's seized properties" in Colombia. *Id.*

### 2.  The June 4, 2003 facsimile from Bernal's lawyer to DEA case agent

Obviously, discussions between Oliva and government representatives concerning the immigration assistance for Bernal's family, "subsistence" payments to Bernal's family, promises not to prosecute members of Bernal's prosecute members of Bernal's family, and the release of property in Colombia **predated Petitioner's trial**. Thus, it is not surprising that, within a *few days* of the conclusion of Bernal's testimony against Petitioner, Oliva sent a note by facsimile to the DEA case agent proving that the communications in this regard had been ongoing. *See* attached Exhibit B. The letter specifically stated that "[*i*]*n addition* to the fax I *previously* sent you [Oliva had] been contacted by the family of Alejandro Bernal **regarding** *some additional matters*". *See* Exhibit B. Clearly, in Oliva's own words, there was a "previous" request for immigration

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 ● (305) 373-6773; FACSIMILE: (305) 373-3832

assistance and these requests pertaining to even more family members were now
"additional matters." *See* Exhibit B.

### 3.  Bernal's August 28, 2003 letter to his lawyer

Further corroboration of these ongoing, but undisclosed, benefits to Bernal and
his family can be found in his contemporaneous letters to his attorney. For example, in
a letter to his attorney only a few weeks after Petitioner's trial, Bernal discusses
promises including (1) that his sentence would be reduced by 50%, (2) that his wife
and her family would not be prosecuted for laundering drug proceeds through their
Merrill Lynch investment account, and (3) that the government would ensure that he be
incarcerated in the State of Florida in order to serve his sentence. *See* Composite
Exhibit C.  He also writes about the fact that the prosecutors who conducted the
Petitioner's trial knew that he lied during his testimony and admitted that he had told
the same prosecutors that the Petitioner was responsible for the September 11, 2001
terrorist attacks on the United States (which they found to be unworthy of believe, yet
not worthy of disclosure) and that case agents told him to lie about the taping of his
office in Colombia (another fact the government found unworthy of belief, yet that it
failed to disclose). *See* attached Composite Exhibit C.

### 4.  March 3, 2004 e-mails between the prosecutors and Bernal's lawyer

Following Petitioner's trial, both government counsel and Bernal's lawyer
continued to discuss, at length, various undisclosed promises made to Bernal and his
family. *See* attached Exhibit E. Specifically, government counsel wrote that the DEA is
"following up with DHS on the [immigration] parole requests and trying to get [Bernal's

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 ● (305) 373-6773; FACSIMILE: (305) 373-3832

wife] more money for subsistence [and that] . . . efforts in this regard [were discussed]
*with others in the prosecution team.*" *See* attached Exhibit D. He further explained that
he was "unable to meet with cooperating witnesses' relatives every time they have a
problem . . . [that] DEA has more flexibility in that respect . . .[and that he] is glad to hear
their concerns [through Bernal's lawyer] *as we have been doing over the past months.*"
*See* attached Exhibit D. A crucial portion at the conclusion of the Government's e-mails,
clearly states, "Ruben, you know that Glenn, Ed, and I will continue to work with DEA to
*keep the government's commitments to your client.*" *See* attached Composite Exhibit D.

    **5.  The January 19, 2005 letter from Bernal to his lawyer**

    In this letter, Bernal describes the Government's failure to keep promises made
to him and his family as part of his cooperation plea. *See* attached Composite Exhibit E.
He again, as he had done for the past 18 months, reiterated that the Government
promised him (1) a greater reduction in his sentence, (2) assistance with preserving his
Colombian properties from forfeiture, (3) financial assistance for his wife in the amount
of $5,000.00 per month, and (4) visas for his family members. *See* attached Composite
Exhibit E.

    **6.  The May 17, 2005 letters from Oliva to Bernal**

    These two letters from Oliva to Bernal are *also* clearly subject to the attorney-
client privilege. Nobody other than Oliva and Bernal was ever expected to read them.
As such, they ought to be afforded a great deal of deference when evaluating the
veracity of their contents. In his first letter, Oliva clearly verifies the undisclosed
promises made. *See* attached Composite Exhibit F. Even more significantly, Oliva

<div align="center">-7-</div>

complains that the Government failed to keep promises to Bernal and referring to the prosecution team as "unprofessional sons of bitches." *See* attached Composite Exhibit F. According to Oliva, "the reality is that the Government has not complied with you in a way that I myself would find acceptable. They have been jerking us around since last year. They promised us you would have your reduction by Christmas and here we are a year and a half later and nothing." *See* attached Composite Exhibit F.

### 7. The August 15, 2005 letter from Bernal to his lawyer

In this letter to Oliva, Bernal writes that he had been visited by the DEA case agent and again informed the agent that the Petitioner was responsible for the September 11, 2001 terrorist attacks on the United States. *See* Exhibit G. As Bernal wrote, it was the "most important" thing he discussed with the agent. *See* Exhibit G.

### 8. Oliva's internal memorandum

Oliva's work product was clearly written as support for any factual presentation concerning Bernal's cooperation. A portion of the memorandum even contains a reference to Bernal providing information regarding "9-11". *See* Composite Exhibit H.

### B. Argument that Good Cause Exists to Conduct Discovery

Contrary to the Government's most recent assertions, Bernal's letters *do have significance.* His attorney's letters have significance. And, perhaps most ironically, the Government's words have significance. Moreover, given the temporal proximity of the authorship of these materials to the Petitioner's trial (a few weeks before and after), the fact that the they *preceded* Bernal's sentence reduction, and that the information contained in them is corroborated, their significance and relevance to the issues now

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 • (305) 373-6773; FACSIMILE: (305) 373-3832

before this Court cannot be understated. Thus, based on the content of these materials, it is imperative for this Court to authorize Petitioner to conduct additional discovery by way of requests for production and the deposition of the authors.

Also contrary to the Government's current position, the e-mails attached to the instant motion clearly demonstrate that the immigration status of Bernal and his family, financial payments to Bernal's family, and the property of Bernal's family **were part of the negotiations as the parties had been "working" on them for "months" before and after trial.** They also clearly show that there were agreements concerning the timing of Bernal's sentence reduction (at his initial sentencing as opposed to afterwards), and literally reference "commitments" to Bernal. Simply stated, these exhibits are clear evidence that certain promises to Bernal had been in effect "for months" prior to the Petitioner's trial. Thus the materials support the Petitioner's request for leave to conduct further discovery including complete electronic files via requests for the production and the deposition of the authors and participants to the e-mails attached hereto.

Finally, and as alluded to *supra*, conducting discovery in the fashion suggested by the Petitioner will not prejudice Mr. Bernal, the government, or Bernal's counsel in any fashion. Rather, Mr. Bernal has waived any privilege he may have even arguably once had to his legal materials. Given that Bernal himself has filed his attorney's work-product and his own attorney-client privileged documents, his waiver has been a voluntary one. Also, the parties would not even be unduly burdened because, given that there are obvious references to other communications involving the same

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 ● (305) 373-6773; FACSIMILE: (305) 373-3832

promises, it appears that only a limited universe of documents exist that would contain material relevant to the issues this court must decide.  These materials are thus now discoverable and good cause, as well as a just resolution of the issues presented, militates in favor of their discovery via a request for production, or depositions, *duces tecum* of Bernal, his attorneys, or any participants to these communications.

## MEMORANDUM OF LAW

Generally speaking, a Section 2255 petitioner, "unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (*citing Harris v. Nelson*, 394 U.S. 286, 295, 89 S.Ct. 1082, 1088-1089, 22 L.Ed.2d 281 (1969).  *See also, Arthur v. Allen*, 459 F.3d 1310 (11th Cir. 2006).   A petitioner therefore is only entitled to conduct discovery where the Petitioner shows "good cause" to do so. *Arthur,* 459 F.3d at 1310 (citations omitted).  Both the United States Supreme Court and the Eleventh Circuit Court of Appeals hold that "[g]ood cause is demonstrated 'where specific allegations . . . show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Arthur*, 459 F.3d at 1310 (*quoting Bracy*, 520 U.S. at 908-09, 117 S.Ct. at 1799 and *Harris v. Nelson,* 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).  *See also*, *Reed v. Quarterman,* 505 F.3d 465, 472 (5th Cir. 2007).

Clearly, "good cause for discovery cannot arise from mere speculation." *Allen*, 459 F.3d at 1311. It is not enough, for example, to simply *allege* that "DNA testing could demonstrate that the same person who raped [the victim] also physically assaulted her,

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 ● (305) 373-6773; FACSIMILE: (305) 373-3832

that this person's blood was on her blouse, that his hair was found in [the victim's] residence, that he was in [the victim's car], and that this person was not [the petitioner]." *Id* 1311.  Thus, according to the Eleventh Circuit, under such circumstances, "discovery cannot be ordered on the basis of pure hypothesis."  *Id*.

Rather, what each of these cases hold is that "'[g]ood cause' for discovery under Rule 6(a)" is present "where specific allegations before the court *show reason to believe* that the petitioner *may, if the facts are fully developed*, be able to demonstrate that he is . . . entitled to relief . . . ."  *Bracy*, 520 U.S. at 908-09 (*citing Harris*, 394 U.S, at 300) (emphasis added).  And, where such specific allegations do exist, "it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry" through the discovery process.  *Bracy*, 520 U.S. at 909 (*citing Harris*, 394 U.S, at 300).

In the instant case, the Petitioner has alleged, *inter alia,* that the Government made a number of specific *undisclosed* promises to the central witness against him. The Petitioner has also alleged that this witness committed perjury at trial. This witness, Alejandro Bernal, has filed numerous *pro se* pleadings with court admitting that such promises were made to him and that he did, in fact, lie.  Significantly, this witness has also filed, *as public record documents*, attorney-client communications as well as his attorneys' work product that supports Petitioner's allegations.  *See* attached composite Exhibits A-F.  These documents, taken either individually or as a whole, establish the factual basis to support "specific allegations" which, if "fully developed," demonstrate that the Petitioner is entitled to relief.

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 • (305) 373-6773; FACSIMILE: (305) 373-3832

WHEREFORE, the Petitioner respectfully requests that this Honorable Court grant him leave of Court to conduct discovery in this matter through a request for production and depositions of the participants to the communications referred herein.

Respectfully submitted,

**/s/ Paul D. Petruzzi**
Paul D. Petruzzi, Esq.
Law Offices of Paul D. Petruzzi, P.A.
169 East Flagler Street
Suite 1241
Miami, Florida 33131
(305) 373-6773
Petruzzi-law@msn.com

**/s/ Todd Gerald Scher**
Todd Gerald Scher
5600 Collins Avenue
Miami Beach, Fl. 33140
(305) 861-9252
tscher@msn.com

**/s/ Michelle Rodriguez Walsh**
Michelle Rodriguez Walsh
46 N.E. 6 St.
Miami, Fl. 33132
(305) 444-7700
washm@bellsouth.net

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 ● (305) 373-6773; FACSIMILE: (305) 373-3832

## CERTIFICATE OF SERVICE

I hereby certify that, on November 25, 2008 a true copy of the foregoing has

been electronically filed and served on the Office of the United States Attorney, 99 NE

4th St. Miami, Florida, 33132.

<div style="margin-left: 40%;">

**/s/ Paul D. Petruzzi**
Paul D. Petruzzi, Esq.
Attorney for Petitioner

</div>

LAW OFFICES OF PAUL D. PETRUZZI, P.A., 169 EAST FLAGLER STREET., SUITE 1241, MIAMI, FLORIDA 33131 ● (305) 373-6773; FACSIMILE: (305) 373-3832