# EXHIBIT A

Ruben Oliva

To: Glenn Alexander
Cc: Ed. Ryan
Subject: Re: Bernal, Alejandro

Dear Glenn:

I reviewed the plea agreement with Alejandro and I have two proposed additions: (1) you omitted the three level acceptance of responsibility standard clause and (2) you ommitted the S-Visa clause. Needless to say these are not crucial clauses but they should be in the agreement just like in everyone elses.

This e-mail will also confirm our conversation of Thursday to the effect that the parties will request that the sentencing of Alejandro Bernal be continued until after he renders his testimony. In this regard, I want to make sure that you agree that any such motion will be a JOINT motion and not an unopposed motion filed by me since Judge Moore is more likely to grant either a Government motion or a joint motion. This, of course, is an important issue for my client. Although he fully understands that there is no guarantee or assurance of a 5K motion regardless of when the sentencing occurs he believes that he is more likely to receive one after he renders complete and truthful testimony at the trial of his co-defendants. In any case, I firmly believe that continuing the sentencing until after his testimony is to the benefit of all the parties since it will insure that both the Defendant and the Government fulfill their respective promises under the plea agreement.

Finally, and this is important, the Government is aware that my client has pending charges in Mexico. You have agreed to assist me in negotiating a concurrent sentence with the Mexican authorities when the time comes. Obviously, my preference would be for you to persuade the Mexicans to drop the charges but I understand that no such commitment can be made.

Once I receive the final revised plea agreement I will contact you in order to schedule a mutually convenient change of plea hearing. I thank you for your assistance and patience in reaching an amicable resolution of this matter.

Sincerely,

Ruben Oliva
ruben@rovlaw.com
www.rovlaw.com

----------PRIVILEGE AND CONFIDENTIALITY NOTICE------------

The information in this electronic mail is intended for the named recipients only. It may contain privileged and confidential matter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is STRICTLY PROHIBITED. If you have received this electronic mail in error, please reply to the sender or call us collect at (305) 856-6868 and delete the copy you received. Thank you.

1

Ruben Oliva  Thu Dec 5, 2002                                                                 Page

**E-mail**

| | |
|---|---|
| From: | Alexander, Glenn |
| Date: | Wed Dec 4, 02 - 2:20 PM - E-mail |
| To: | 'Ruben Oliva' (Receipt Notification Requested) (IPM Return Requested) |
| CC: | |
| Subject: | RE: Bernal, Alejandro |
| | |
| Contact: | Glenn Alexander |
| File: | Bernal, Alejandro - |

Ruben
Here is an updated plea agreement with S-Visa language and the standard 3 points for acceptance and low end of guidelines paragraph (para.6; I deleted the 'low-end" of guidelines language from 9b). Yes, you can make a joint motion to continue sentencing until after trial (although I would rather agree not to object to a defense motion that I agree not to object to continue it).

Glenn

-----Original Message-----
From:   Ruben Oliva [mailto:rubenoliva@rovlaw.com]
Sent:   Wednesday, November 27, 2002 10:48 AM
To:     Alexander, Glenn
Subject: Re: Bernal, Alejandro

Hi Glenn:

Just read the motion filed by Roy Black. Do you guys still think it was a good idea for Dan Foreman to again represent Bernal?

I'm still waiting for a response to my last e-mail regarding the proposed changes to the plea agreement.

Have a great Thanksgiving!!

Ruben.

Attachments: bernal.ple.wpd

| | |
|---|---|
| From: | Ricardo.Del.Toro@usdoj.gov |
| Sent: | Wednesday, September 10, 2003 3:56 PM |
| To: | 'rubenoliva@rovlaw.com' (Receipt Notification Requested) (IPM Return Requested) |
| Cc: | Minh Nguyen (E-mail) (Receipt Notification Requested) (IPM Return Requested) |
| Subject: | RE: Bernal, Alejandro |

Ruben:

I spoke with SA Minh Nguyen, who explained to me that he has obtained approval from Homeland Security for the parole of about 8 relatives of Bernal who are currently being protected and cared for by DEA SA Dial Johnson in Bogota, while they await travel to the US. Minh is also working on getting DEA funds to pay Bernal's wife for living expenses. He explained that, because of the end of the fiscal year, DEA may not release funds until October. I spoke with ASAC Fred Gannum and asked him to help Minh get his fiscal personnel to release the money sooner. Fred said he would do everything he could to expedite the payment.

Minh also told me that he has sent letter and spoken with the Bureau of Prisons designator to try to get BOP to designate Bernal to a facility in Florida. I also sent a letter to the BOP designator about it. BOP thinks that Bernal will face a greater security risk in South Florida than in Pennsylvania. I will follow up with a phone call to the designator to try to convince her to re-designate Bernal to Florida.

I also spoke with Jim Faulkner, the DOJ LEGAT in Bogota. I asked him to look into your question about Bernal's father-in-law's seized properties. Jim explained, as I expected, that he could not tell the Colombians what to do in their legal proceedings. Jim agreed to find out what the Colombians' position is with respect to those properties and to call me bak with any information he gathers.

Finally, as to Bernals' cooperation, I continuously sign release letters for Minh and out-of-town agents who come to debrief Bernal. So, I know that DEA is still working with Bernal and that his cooperation continues. I fully appreciate the sacrifices your client has made to cooperate with the government. Minh has been working furiously to help Bernal's family get paroled in the US, get funds for their subsistence, and give them security. He has also worked incessantly to help with Bernal's designation and SHU placement. Minh has also worked to facilitate other agents' debriefings with Bernal, a time-consuming job that inures only to the benefit of Bernal and other agents, not to Minh. So, please explain to your client that, despite the slow pace of the process, everyone is working to secure his family, to help them, and to help him in any way that we can, especially Minh.

We will keep you apprised of any progress with BOP, any information we gather from Jim and any other issues outstanding. Stay in touch and let us know if there is anything else we can do.

Rick Del Toro

-----Original Message-----
From: rubenoliva@rovlaw.com [mailto:rubenoliva@rovlaw.com]
Sent: Wednesday, September 10, 2003 2:15 PM
To: Del Toro, Ricardo
Subject:       Re: Bernal, Alejandro

Hi Rick:

I want to give you an update on Alejandro Bernal in case you've been out of the loop. Since his testimony in your case against Fabio Ochoa my client's wife's property in Colombia was seized. In addition, his parents-in-law property (which has absolutely no connection to any drug proceeds) were also seized by the Colombians. Interestingly not a single piece of property belonging to Ochoa has been seized. These seizures have effectively left my client's wife and children penniless and homeless. We have requested financial assistance from the D.E.A. and to date that has not been forthcoming. In addition, my client remains in solitary confinement and all efforts to have him designated to a local institution have likewise been fruitless. In addition, the DEA has documented him as a CI but it does not appear that they are having him interviewed to develop any cases. Meanwhile, they get very upset when any other agency attempts to interview him. They did make him available to some DEA agents from Phoenix who (without my prior knowledge and consent) had him execute an affidavit which was later publicly disclosed in an attempt to forfeit a single plane in a civil matter against Guillo Angel. The disclosure of the affidavit then led to additional threats against his remaining family in Colombia which forced them to flee Medellin and go to Bogota where they are staying at a hotel while visas are obtained

for them by the DEA (this has now been going on for several months).

My client, as would be expected, is at wit's end. It appears that he and his family have been left twisting in the wind. He must now face the reality that he has been completely abandoned and his family left homeless in the US.

I only tell you all this so when my client eventually reacts to this situation it won't take you and your office by surprise. Frankly, I'm a little disappointed in the way he is being treated particularly when it is clear to me at least that he has been a valuable and significant witness for the Government and when his value has not been diminished by the conviction of Ochoa in light of the additional significant defendants and targets which remain to be prosecuted.

I would simply ask that you intervene to the extent that you can (I fully recognize your institutional limitations) so that at least I can tell my client that the US Attorney's Office is doing everything it can to alleviate the situation or to exert it's influence on the DEA and the BOP.

Forewarned is forearmed.

Thanks,

Ruben.

2