IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 07-22659-MOORE/GARBER

FABIO OCHOA,

>   Movant,

v.

UNITED STATES OF AMERICA,

>   Respondent.

_____/

## ORDER DENYING MOVANT'S MOTION TO VACATE

THIS CAUSE came before the Court upon Movant's Amended Motion to Vacate, Set Aside and/or Correct Judgment and Sentence (ECF No. 10). This Motion is now fully briefed.

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

I.  **BACKGROUND**[1]

On August 26, 1999, Movant Fabio Ochoa ("Ochoa") was named in a superceding indictment. See Superceding Indictment (CR ECF No. 10).[2] After Ochoa was extradited from Colombia, a jury found him guilty of two counts of this indictment: conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and conspiracy to import five kilograms or more of cocaine into the U.S., in violation of 21 U.S.C. §§ 952 and 963.

---

[1] The facts surrounding this case have already been discussed at length elsewhere, see United States v. Ochoa-Vasquez, 428 F.3d 1015 (11th Cir. 2005), and will not be repeated here except to the degree relevant to specific claims.

[2] CR-ECF numbers refer to Case No. 99-06153-CR-KMM.

On August 26, 2003, the Court sentenced Ochoa to 365 months in prison and five years of supervised release. (CR ECF Nos. 1562, 1581). Ochoa appealed. The Eleventh Circuit upheld the conviction and sentence but reversed with respect to several rulings relating to access to sealed documents. Ochoa then moved the district court for a new trial based on new evidence. The motion was denied, and this denial was also appealed. The Eleventh Circuit affirmed the trial court's decision.

Ochoa now files his Amended Motion pursuant to 28 U.S.C. § 2255, alleging seven claims for relief: (1) he is entitled to a new trial because of the Government's knowing use of false testimony and withholding of material evidence (Claim I); (2) his appellate counsel was ineffective for failing to argue that the Government had no jurisdiction over Ochoa (Claim II); (3) his trial counsel was ineffective for failing to argue that the Government had not shown an essential element of the charged crimes (Count III); (4) his appellate counsel was ineffective for failing to raise a Federal Rules of Evidence 404(B)/403 claim (Claim IV); (5) the Government lied while presenting grand jury testimony (Claim V); (6) his trial counsel suffered from conflicts of interest (Claim VI); and (7) he is entitled to re-sentencing (Claim VII). Each of these claims will be addressed in turn.

## II.     RECANTED TESTIMONY (Claim I)

Ochoa's first claim relates to the recantation of co-conspirator Alejandro Bernal ("Bernal"), who testified against Ochoa at trial.

### A.     Background

Bernal was one of four co-conspirators who testified as to Ochoa's involvement in a conspiracy to import and sell cocaine. He testified pursuant to a plea agreement, in which the

Government stated it would make a motion on Bernal's behalf recommending that his sentence be reduced and that Bernal be granted certain immigration benefits.

Several years after Ochoa's conviction and sentence, Bernal partially recanted his trial testimony in a letter dated May 28, 2007 to an assistant U.S. attorney. He stated that, in exchange for testifying, the Government had made several promises beyond those contained in his plea agreement. These promises included definite sentencing reductions, immigration benefits for his family, and protection for property of his in Columbia. On September 20, 2007, Bernal appeared to admit the contents of the first letter were fabricated, stating "I have acted erroneously, under much pressure, financial and family problems and with Olivia." On December 9, 2007, Bernal renewed his recantation and stated several other promises that were made to him, including an "earnest" offer by a member of the Government that Bernal come live with his family after the trial. He also stated that Government prosecutors pressured Bernal to falsely state that he saw the wiretaps that were used to record Ochoa and other conspiracy members.[3]

### B. Law Governing Recantations

"[R]ecantation evidence should be 'looked upon with the utmost suspicion.'" Castillo v. Ercole, 2009 WL 1492182, at *6 (S.D.N.Y. May 27, 2009) (quoting Ortega v. Duncan, 333 F.3d 102, 107 (2d Cir. 2003)). This is especially so where the recantation stands "alone, uncorroborated, and unsupported." Summers v. Dretke, 431 F.3d 861, 872 (5th Cir. 2005). As the Eighth Circuit has explained:

---

[3] Ochoa does not make clear what significance attaches to whether Bernal saw the recorded wiretaps other than to suggest that Bernal's statement to that effect was false.

> It is easy to understand why this should be so. The trial is the main event in the criminal process. The witnesses are there, they are sworn, they are subject to cross-examination, and the jury determines whether to believe them. The stability and finality of verdicts would be greatly disturbed if courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at the trial.

United States v. Grey Bear, 116 F.3d 349, 350 (8th Cir. 1997). "The majority of . . . circuits which have addressed this question . . . have found that it is within the district court's discretion to decide new trial motions based on recanted testimony without a hearing." United States v. Provost, 969 F.2d 617, 620 (8th Cir. 1992) (collecting cases from First, Second and Fifth Circuits); United States v. Pearson, 203 F.3d 1243, 1274–75 (10th Cir. 2000) (same). "In making the preliminary credibility determination, the question is not whether the district judge believes the recantation, but how likely the district judge thinks that a jury at a second trial would be to believe it." United States v. Papajohn, 212 F.3d 1112, 1117–18 (8th Cir. 2000) (abrogated on other grounds by Crawford v. Washington, 541 U.S. 36 (2004)); Grey Bear, 116 F.3d at 350 (same).

Typically, "[f]or newly discovered evidence to justify a new trial, the evidence must be material and not merely cumulative or impeaching, and must be such that it will probably produce an acquittal." United States v. Diaz, 190 F.3d 1247, 1255 (11th Cir. 1999). However, where potentially credible allegations exist suggesting that the Government knowingly used false testimony, a defendant's burden is lightened and the standard is "whether it is reasonably likely that the truth would have produced a different verdict." United States v. Antone, 603 F.2d 566, 570 (5th Cir. 1979) (citing Giglio v. United States, 405 U.S. 150 (1972)). Where this false testimony involves withheld impeachment evidence "[t]he focus of inquiry is whether disclosure

4

of this information would undermine his credibility so as to introduce an element of reasonable doubt." Id.

C.  Analysis

Even assuming that Giglio's standard applies to Bernal's recantation, no hearing or new trial is necessary for two independent reasons. First, no reasonable juror would credit the recantation as true. Few kinds of new evidence are less trustworthy than a recanted recantation. See Maize v. Wainwright, 421 F.2d 151, 152 (5th Cir. 1969) ("[W]hen a witness recants the recantation and then recants the re-recantation, a Trial Judge neither needs nor must credit him. The District Judge was clearly correct in denying the petition without a hearing."). This is especially so where, as here, the self-stated purpose of the "recanting" letters was to obtain benefits allegedly owed to Bernal by the Government. Thus, Bernal has significant incentives to fabricate the contents of the recantations. Indeed, he brought a meritless pro se claim to compel the Government to fulfill the alleged promises.[4] Further, the recantation itself is incredible. See United States v. Leibowitz, 919 F.2d 482, 483 (7th Cir. 1990) (recantation affidavits are not worthy of belief where they contain fantastic assertions). For example, Bernal's recantation contains allegations that a prosecutor earnestly invited Bernal to live with him after the trial was over. Similarly, the suggestion that the Government would undergo an intense lobbying effort to knowingly make Bernal perjure himself by stating he saw the hidden wiretaps is nonsensical. The veracity of the wiretaps were not challenged by Ochoa's defense and the genuineness of Ochoa's voice on the wiretaps was confirmed by several sources. Tactically, the Government

---

[4] The Eleventh Circuit denied this claim. United States v. Bernal-Madrigal, 346 F. App'x 397 (11th Cir. 2009).

encouraging perjury to add cumulative evidence to support an uncontested point is absurd. Simply stated, the recantation letters are worthless as new evidence.[5]

Second, even assuming Bernal's letters were credible, Bernal's claim still would fail. As in <u>Antone</u>, the jury here was already apprised that Bernal had significant self-interest in testifying against Ochoa. Most significantly, the jury was aware that the Government had promised Bernal that it would request Bernal's time in prison be reduced. This promise already created such great self-interest to testify that any additional self-interest in protecting property or obtaining immigration benefits for his family would be cumulative. Similarly, in light of overwhelming uncontested evidence that the wiretap recordings were authentic, even if Bernal lied while testifying about seeing the wiretaps, no juror could reasonably find based on this evidence that Ochoa was innocent. Cumulatively, the recantation evidence was not reasonably likely to sway a juror in Ochoa's favor, given the overwhelming amount of separate evidence of guilt, including testimony from three other co-conspirators, documentary evidence, and audio and videotape recordings. In fact, Bernal himself still maintains that Ochoa was guilty of narcotics trafficking.

In sum, Ochoa's first claim lacks merit and must be dismissed.

---

[5] Ochoa points to several correspondences from the Government suggesting that they were assisting Bernal and his family in ways that went beyond the language of the plea agreement. This hardly corroborates the recantation when considering that Bernal testified in a high profile criminal trial involving a drug cartel known for violence. Thus, the Government had legitimate reasons to protect the safety and well-being of Bernal and his family, including fulfilling non-legal ethical duties and encouraging future potential cooperators to come forward.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL (Claims II, III, IV and VII)

Ochoa's second and third claims allege that his appellate counsel was ineffective in failing to raise on direct appeal issues related to Ochoa's lack of intent to import drugs into the United States. Ochoa argues that the Government did not prove Ochoa's intent. Thus, the Government failed to show jurisdiction (Claim II) and failed to prove an essential element of its charged offenses (Claim III).[6] Additionally, he claims that his appellate counsel should have raised the issue of the admittance into evidence of information regarding Ochoa's criminal background (Claim IV) and should have raised claims of Booker violations (Claim VII).

Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). Defendants usually must bear the danger of their attorneys committing mistakes. "Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." Murray v. Carrier, 477 U.S. 478, 492 (1986).

Under the Supreme Court's Strickland decision, ineffective assistance of counsel is only established if the defendant can prove:

> two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance

---

[6] Ochoa's third claim is framed as ineffective assistance of trial counsel. Because we find this claim was adequately preserved by trial counsel's Rule 29 argument related to jurisdiction, we address this as an alleged failure of appellate counsel. In a footnote, Ochoa argues that his trial counsel was also ineffective for failing to develop the record further with respect to these claims. This claim is without merit as Ochoa has made no showing that the outcome would have been different had the record been developed further.

7

>prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
>
>The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. . . .
>
>A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Strickland v. Washington, 466 U.S. 668, 687-88 (1984); see also Shere v. Secretary, Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) ("Defendant may establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance defendant would have prevailed on appeal.").

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). It is "possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. Id. at 288; see Heath v. Jones, 941 F.2d 1126, 1130-31 (11th Cir. 1991) ("[E]ffective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious.") (citing Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Gray v. Greer, 800 F.2d 644, 646

(7th Cir. 1986). Counsel need not "cloud what she deemed to be more persuasive arguments."

Eagle v. Linahan, 279 F.3d 926, 937 (11th Cir. 2001). This is so because:

> Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one. . . . [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.

Barnes, 463 U.S. at 752 (quoting Justice Jackson, Advocacy Before the Supreme Court, 25 Temple L.Q. 115, 119 (1951)).

In the present action, Ochoa has failed to show that his appellate counsel's performance fell below an objective standard of reasonableness. Counsel filed a 63 page initial brief containing seven different claims, including a First Amendment claim relating to access to sealed records, a claim regarding the use of an anonymous jury and a Batson challenge. Appellate counsel also intervened in an appeal in a related case, received an amicus brief by the ACLU of Florida in the primary appeal, and later brought a second appeal based on newly discovered evidence. Thus, Ochoa must show that his prior counsel was constitutionally ineffective by the failure to bring a particular claim that was "clearly" more meritorious than the claims brought. No such showing has been made. On appeal, his counsel successfully won his First Amendment claim to unseal documents, and the anonymous jury and Batson challenges were considered meritorious by a dissenting judge. This strongly suggests that Ochoa's counsel did a highly competent job of selecting potentially meritorious issues and in litigating those issues. See Dunkins v. Thigpen, 854 F.2d 394, 400 (11th Cir. 1988) (finding no ineffective assistance where counsel "performed admirably in formulating and pursuing petitioner's defense strategy at trial and on appeal"); Philmore, 575 F.3d at 1265 ("Appellate counsel's failure to

challenge [a] decision under a different legal theory cannot be considered deficient performance, especially given that counsel raised eleven other enumerations of error in a one-hundred page brief."). Further, counsel could reasonably decide not to include claims based on Ochoa's intent given evidence Ochoa did intend to import cocaine into the United States. Bernal[7] testified that a co-conspirator, Armando Valencia, transported a 8,671 kilo load of cocaine to the United States. (CR-ECF No. 1573, at 80-81, 83). He testified further that Ochoa had invested in this load. Id. Another co-conspirator testified that Ochoa was paid $150,000 in U.S. currency for his share in this load. (CR- ECF No. 1415 at 30-33). Ochoa's suggestion that he was unaware that the drugs he owned would be sent by a co-conspirator to the United States would have to overcome evidence showing that he was an experienced high-level drug dealer with a significant investment in this shipment. Thus, even assuming Ochoa's counsel erroneously failed to raise appeals based on Ochoa's lack of intent, counsel's decision to focus on other claims did not make his representation constitutionally infirm. Murray v. Carrier, 477 U.S. 478, 486-87 (1986) ("the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it," does not show ineffective assistance); White v. State of Fla., Dept. of Corr., 939 F.2d 912, 914 (11th Cir. 1991) (error not obvious where it was "undiscovered by several attorneys and judges for approximately five years").

    Ochoa's remaining ineffective assistance claims are even weaker. With respect to the admission of Ochoa's past criminal record, the trial court's decision would have been reviewed for abuse of discretion, and reversal under this standard was unlikely given that the evidence was

---

[7] To the extent Ochoa's arguments are based on Bernal's recantation of this testimony, his claim is denied for the credibility reasons stated in Section II.

only admitted to show intent or because the evidence was inextricably intertwined with the charged offenses. Further, the jury was provided with a limiting instruction to only use this evidence appropriately. Thus, it is highly doubtful that the Eleventh Circuit would have reversed on these grounds.

Similarly, an appeal based on Booker v. United States, 543 U.S. 220 (2005), would have virtually no chance of success. This claim would have been reviewed for plain error, which requires a defendant to show an "(1) error, (2) that is plain, and (3) that affects substantial rights," and that "(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (citation omitted). Under the third prong, the defendant must show that the error has "affected substantial rights, which almost always requires that the error must have affected the outcome of the district court proceedings." Id. (citation and punctuation omitted). Here, Ochoa points to no evidence suggesting that his sentence would have been lower under an advisory, as opposed to mandatory, sentencing regime. Thus, it would have been exceedingly difficult for his appellate counsel to show the third prong was met. Therefore, Ochoa cannot show his appellate counsel was ineffective for failing to raise this claim.[8]

In sum, Ochoa has failed to show that his appellate counsel performed deficiently, and therefore the first Strickland prong is not met. Where no ineffective assistance is shown, this Court may not review the actual merits of the claims appellate counsel failed to bring. Philmore, 575 F.3d at 1265. Thus, claims two, three, four and seven must be dismissed.

---

[8] To the extent that Ochoa's sentencing argument is based on the rule of specialty, it is barred from collateral review. See Burke v. United States, 152 F.3d 1329 (11th Cir. 1998).

## IV. GRAND JURY TESTIMONY

Ochoa claims that the Government improperly lied during grand jury proceedings. Where the Government makes factual errors before a grand jury, but a petit jury later finds the accused guilty beyond a reasonable doubt, the grand jury errors are deemed harmless. See United States v. Mechanik, 475 U.S. 66, 71 (1986). The exception to this rule is where a prosecutor knowingly presents false evidence to a grand jury. Id. at 70. Here, at most, Ochoa has pointed to factual inaccuracies and has not presented any evidence suggesting that the Government knew that it was presenting false testimony. Thus, claim five must be dismissed.

## V. CONFLICT OF INTEREST

Ochoa claims that one of his attorneys provided ineffective assistance of counsel because he labored under a conflict of interest. This claim was previously denied on direct appeal. Ochoa-Vasquez, 428 F.3d 1015. Ochoa has made no showing of newly discovered evidence that would change the outcome of the Eleventh Circuit's prior decision. Thus, claim six must be dismissed.

## VI. CONCLUSION

For the foregoing reasons, it is ORDERED AND ADJUDGED that Ochoa's Amended Motion to Vacate (ECF No. 10) is DENIED. The Clerk of the Court is instructed to CLOSE this case. All pending motions not otherwise rule upon are denied as moot.

DONE AND ORDERED in Chambers at Miami, Florida, this 24th day of March, 2011.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record